UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **JIMMY DALE TERRY,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | Civil Action No. 7:14-CV-2294-CLS |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant, Jimmy Dale Terry, commenced this action on November 26, 2014, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ should have found him to be disabled under the requirements of Listing 1.04, and that he improperly determined his residual functional capacity. Upon review of the record, the court concludes that these contentions are without merit.

**A.     Listing 1.04**

The ALJ found that claimant

> has no impairment which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations. Specifically, the undersigned has considered Listings 1.03 and 1.04. The evidence of record does not contain any diagnostic findings, signs, symptoms, or laboratory results that meet any of the listed impairments. Additionally, there are no opinions in the record from medical experts or any other type of medical or psychological consultants designated by the Commissioner, which indicate that the claimant's impairments alone or in combination equal a listing.[1]

Claimant contends that the ALJ should have found him disabled pursuant to Listing 1.04, which requires proof of:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

---

[1] Tr. 85.

>     A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
>     B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
>     C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 1.04 (listings).

The Commissioner acknowledges that claimant has a disorder of the spine,[2] and it cannot be denied that claimant's spinal disorder has caused him pain. There also is *some* evidence of compromise of the nerve root or spinal cord. Soon after claimant's injury in December of 2009, an MRI revealed a burst fracture at T11 with "associated mild spinal stenosis," but no "definite abnormality of the spinal cord."[3] Additionally, Dr. Oluyinka Adediji, the consultative examiner, stated in August 2013 that x-rays of the thoracic spine revealed that the C7-T1 disc space was "moderately

---

[2] Doc. no. 11 (Commissioner's brief), at 6.
[3] Tr. 302.

narrowed."[4] Indulging claimant's argument that these records constitute *substantial* evidence to support spinal cord compromise for a significant period of time (*i.e.,* twelve months or more),[5] he can satisfy the prefatory criteria of the Listing.

Even so, there is no evidence to satisfy either the A, B, or C criteria of the Listing. With regard to the A criteria, there is no evidence of motor loss, sensory or reflex loss, or positive straight-leg-raising test. With regard to the B criteria, there is no evidence of spinal arachnoiditis. With regard to the C criteria, there is no evidence of pseudoclaudication that resulted in an inability to ambulate effectively. Because claimant cannot satisfy the A, B, or C criteria of Listing 1.04, he does not meet that Listing.

Claimant also asserts that his back and hip impairments, when considered in combination, are medically equivalent to the impairments described in Listing 1.04.[6] Social Security regulations provide the following guidance for evaluating medical equivalence:

> (a) What is medical equivalence? Your impairment(s) is medically equivalent to a listed impairment in appendix 1 of subpart P of part 404 of this chapter if it is at least equal in severity and duration to the criteria

---

[4] Tr. 473.

[5] Whether those two records can constitute *substantial* evidence of spinal cord compromise is questionable, because there is other evidence affirmatively suggesting that the spinal cord was *not* compromised. An MRI on June 28, 2011 revealed "no significant stenosis or impingement" in claimant's lumbar spine, and "no central canal stenosis in thoracic spine." Tr. 451. X-ray results from December 17, 2011 revealed "no significant narrowing of the spinal canal." Tr. 427.

[6] Claimant does not argue functional equivalence.

of any listed impairment.

(b) How do we determine medical equivalence? We can find medical equivalence in three ways.

>  (1) (i) If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but—
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
>
> (2) If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.
>
> (3) If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(a)-(b). *See also* 20 C.F.R. § 404.1526(a)-(b).

The impairments resulting from claimant's hip and back conditions, even when considered together, are not of equal medical significance to Listing 1.04. Claimant undeniably has suffered injury to his spinal cord and hip, and those injuries undeniably have resulted in some pain and limitation of function. Those limitations, however, are better addressed through the ALJ's residual functional capacity finding. They do not have the same medical significance as the neurological abnormalities addressed by Listing 1.04.

**B.    Residual Functional Capacity Finding**

The ALJ found that, despite his impairments, claimant retained the residual functional capacity to

> perform sedentary work . . . except the operation of foot controls bilaterally is limited to no more than occasional. The claimant can never climb ladders, ropes, or scaffolds, and can never crouch or crawl. The claimant can no more than occasionally climb ramps and stairs, balance, stoop, and kneel. The claimant can have no more than occasional exposure to extreme cold and heat, humidity, wetness, excessive vibrations, and pulmonary irritants such as dust, fumes, odors, and gases. The claimant can never operate or control hazardous, moving machinery, can do no commercial driving, and can never work around unprotected heights.[7]

Claimant asserts that the residual functional capacity finding was not supported by substantial evidence because his pain and other subjective symptoms prevent him

---

[7] Tr. 85-86.

from performing even the limited range of work specified by the ALJ. To demonstrate that pain or another subjective symptom renders him disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). Furthermore, "[a]fter considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (alteration supplied).

The ALJ properly applied these legal principles. He found that claimant's medically determinable impairments could reasonably be expected to cause the symptoms claimant alleged, but he nonetheless concluded that claimant's statements about the intensity, persistence, and limiting effects of his symptoms were not

credible to the extent they were inconsistent with the residual functional capacity finding.[8] The ALJ reasoned that claimant's physicians had encouraged him to increase his activities, and that his pain appeared to be well-controlled with medication.[9] The ALJ also noted that, while claimant testified to feeling groggy and being unable to concentrate while on his pain medications, he had not complained about those side effects to his pain management physician. The ALJ attempted to accommodate any side effects claimant might experience by limiting him to sedentary activity.[10] The ALJ also concluded that claimant's daily activities — including personal care, preparing simple meals, grocery shopping, hunting, and helping care for his children — were "not as limited as one would expect given the complaints of totally disabling symptoms."[11] Finally, the ALJ considered the opinion of Dr. Adediji, the consultative examiner, but assigned even more limitations than the doctor recommended, in order to accommodate claimant's reported ability to stand and walk for only three hours during an eight-hour work day.[12]

Claimant disagrees with the ALJ's interpretation of the medical records and the ALJ's conclusions about his ability to work. Even though there is *some* evidence to

---

[8] Tr. 86.

[9] Tr. 87.

[10] Tr. 88.

[11] *Id.*

[12] *Id.* Dr. Adediji recommended a limited range of *light* work, while the ALJ imposed a limited range of *sedentary* work.

support the limitations alleged by claimant, there also is substantial evidence to support the ALJ's determinations. Claimant can only succeed by demonstrating that the ALJ's decision lacks substantial evidentiary support in the record, and claimant has not done that. Most of the evidence relied upon by claimant consists of his own testimony about his pain and limitations, or notations by the treating and examining physicians that he experiences pain or suffers from an impairment in his back and/or hip. However, the mere existence of an impairment, a medical condition, or even pain does not determine disability. Instead, the relevant consideration is the effect of claimant's impairment, or combination of impairments, on his ability to perform substantial gainful work activities. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a) (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)). Here, the ALJ's conclusion that claimant's pain and underlying condition did not result in disabling functional limitations is supported by substantial evidence.

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 21st day of October, 2015.

_____
United States District Judge